UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REGINA LEWIS,

                      Plaintiff,

    v.

ELLEN HUEBNER, *et al.*,

                      Defendants.

No. 17-CV-8101 (KMK)

OPINION & ORDER

Appearances:

Regina Lewis
Newburgh, NY
*Pro Se Plaintiff*

Steven Gabriel Morris, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Regina Lewis ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Ellen Huebner ("Huebner"), MaryAnn Franqui ("Franqui"), Barry Marlow ("Marlow"), Lisa Wallace ("Wallace"), and Edward Campbell ("Campbell") (collectively, "Defendants"), each employees at Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson"). Plaintiff alleges that, while detained at Mid-Hudson, Defendants subjected her to excessive force and forced medication in violation of her constitutional rights. (*See generally* Am. Compl. (Dkt. No. 21).) Before the Court is Defendants' Motion To Revoke Plaintiff's IFP Status and To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 37).) For the following reasons, the Motion is granted.

I. Background

A. Injunction Against Filing

In November 2014, while awaiting trial on criminal charges, *see United States v. Lewis*, No. 12-CR-655 (S.D.N.Y. filed Aug. 23, 2012), Plaintiff filed a pro se Action in the United States District Court for the Eastern District of New York, *see Lewis v. Epstein*, No. 14-CV-9404 (E.D.N.Y. filed Nov. 12, 2014), and submitted a request to proceed without prepayment of fees, that is, in forma pauperis ("IFP"). On July 29, 2015, Judge Brian M. Cogan, acting pursuant to the three-strikes provision in the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), issued an Order barring Plaintiff from filing future federal actions IFP while incarcerated. *Lewis*, No. 14-CV-9404 (E.D.N.Y. July 29, 2015) (order imposing filing injunction (Dkt. No. 8)). Judge Cogan held:

> While Plaintiff was a prisoner, she filed three or more cases that are deemed strikes because they were dismissed as frivolous, malicious, or for failure to state a claim. Because Plaintiff has not shown cause why the bar order should not be imposed, plaintiff is barred from filing future actions IFP in this Court if, in the future, she is once again incarcerated, unless she is under imminent danger of serious physical injury.

(*Id.* at 2.)[1] On May 9, 2017, the Second Circuit dismissed Plaintiff's appeal and further "reminded [Plaintiff] that in November 2016, this Court determined that [Plaintiff] has a pattern of filing frivolous appeals and warned [Plaintiff] that 'the continued filing of duplicative, vexatious, or clearly meritless appeals, motions, or other papers, will result in the imposition of a sanction, which may require [Plaintiff] to obtain permission from this Court prior to filing any

---

[1] The cases that comprised Plaintiff's strikes are: *Lewis v. Williams*, No. 14-CV-6946 (S.D.N.Y. Oct. 28, 2014) (order dismissing case for failure to state a claim and on immunity grounds); *Lewis v. Hudson*, No. 14-CV-359 (N.D. Tex. July 14, 2014) (order dismissing case for failure to state a claim); *Lewis v. Ferguson*, No. 14-CV-683 (S.D.N.Y. Mar. 14, 2014) (order dismissing case for failure to state a claim); *Lewis v. Galiotta*, No. 13-CV-3160 (S.D.N.Y. Aug. 26, 2013) (order dismissing case for failure to state a claim and on immunity grounds).

further submissions in this Court (a 'leave-to-file' sanction).'" *Lewis*, No. 14-CV-9404 (S.D.N.Y. May 9, 2017) (Second Circuit mandate (Dkt. No. 13)).

B. Procedural Background

Plaintiff filed her initial Complaint in this Court on October 19, 2017, while detained at Mid-Hudson. (*See* Compl. 4 (Dkt. No. 1).) Plaintiff filed an application requesting to proceed IFP, (Dkt. No. 7), which the Court granted on December 12, 2017. (Dkt. No. 9.) The Court concluded that, although Plaintiff is subject to Judge Cogan's filing injunction, the Complaint "arguably alleges a pattern of abuse by . . . [Defendant] Marlow and an ongoing threat from alleged abuse of the medication protocol," such that Plaintiff satisfied 28 U.S.C. § 1915(g)'s imminent danger exception. (Order of Service 2 (Dkt. No. 10).) However, the Court noted that its decision to permit Plaintiff to proceed IFP was "without prejudice to Defendants' making a motion seeking to revoke Plaintiff's IFP status" or to dismiss. (*Id.*)

On January 16, 2018, Plaintiff wrote a letter containing additional allegations against Defendants. (Dkt. No. 19.) That letter was filed in this Court on January 25, 2018. (*Id.*) On February 6, 2018, the Court directed Plaintiff to file an amended complaint including those and any other allegations by February 28, 2018. (Dkt. No. 20.) Plaintiff signed her Amended Complaint on January 17, 2018. (*See* Am. Compl. 4 (Dkt. No. 21).) The Amended Complaint, which contains a return address in Newburgh, New York, was filed in this Court on March 15, 2018, (*see id.* at 1).

On May 24, 2018, Defendants filed the instant Motion To Revoke Plaintiff's IFP Status and To Dismiss. (*See* Not. of Mot.; Decl. of Steven G. Morris, Esq. in Supp. of Mot. (Dkt. No. 38); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 39).) Plaintiff did not timely respond, and on August 1, 2018 the Court deemed the Motion fully submitted. (Dkt. No. 42.)

3

On January 14, 2019, Plaintiff filed a letter responding to the Motion, (Letter from Regina Lewis to Court ("Pl.'s Mem.") (Dkt. No. 44)), which the Court will consider in light of the liberal treatment afforded pro se litigants, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).

C. Factual Background

The following facts are drawn from the Amended Complaint except where noted, and are taken as true for the purpose of resolving the instant Motion.

On September 6, 2017, while detained at Mid-Hudson, Plaintiff "refused to get out of bed" as she was "suffering from a nervous breakdown." (Am. Compl. 1.)[2] Defendant Marlow "came to [her] room, and slapped the left side of [her] face." (*Id.*) He then used "excessive force to put [Plaintiff] in a wheelchair." (*Id.*) While doing so, Marlow "tried to break [Plaintiff's] 'fucking' wrists" and verbally harassed Plaintiff. (*Id.*) In particular, Marlow falsely "accused" Plaintiff "in front of at least six staff members" — including Defendants Wallace and Huebner — of threatening to "punch him in the face." (*Id.*) Marlow then "called the doctor," who gave Plaintiff "an injection based on the allegations." (*Id.*) Later that morning, Defendant Ellen, "after falsifying a report against [Plaintiff]" — the contents of the report are unspecified — "pulled [Plaintiff's] pajama pants down beneath [her] butt crack and injected [her]" in order to "intentionally shame and humiliate [her]," "to cause [her] pain," and to "mock [her]." (*Id.*) Plaintiff "felt sexually assaulted" and "violated." (*Id.*) After the injection was administered, Defendant Franqui said, "'Good work guys! Now we finally can get meds over objection.'" (*Id.*) Plaintiff thereafter "refused to go to lunch, because the seven flights of stairs are too much"

---

[2] The Amended Complaint does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the document.

4

based on her angina. (*Id.*) As a result, a non-defendant employee at Mid-Hudson "put his knee into [Plaintiff's] back while . . . Huebner gave [Plaintiff] a second shot." (*Id.* at 1–2.) Plaintiff was "taken by wheelchair to" the "Special Services Unit," which is "a unit for the acutely mentally ill" and for "violent, assaultive[,] and unmanageable patients," for "three weeks." (*Id.* at 2.)

In November 2017, another patient instigated a physical altercation with Plaintiff. (*Id.*) (It is unclear whether this altercation occurred in the Special Services Unit or elsewhere.) Franqui, along with another non-defendant employee at Mid-Hudson, restrained the other patient and "asked [the other patient] if she wanted to press charges" against Plaintiff. (*Id.*) Further, Defendant Campbell, who "continues to harbor resent[ment]" against Plaintiff because of her "prior complaint against him," arrived on the scene and "slammed [Plaintiff] to the stairs[] so hard that [her] back and tailbone were in severe pain." (*Id.*) The pain lasted "for nearly five weeks." (*Id.*) Campbell then "file[d] a false report identifying [Plaintiff] as the aggressor." (*Id.*) That report caused Wallace and Huebner to "insist[]" that Plaintiff "take medication." (*Id.*) Wallace and Huebner further "wrote a risk assessment that characterized [Plaintiff] as unpredictable and assaultive, and ordered [Plaintiff] to be on close-observation with no sharps and no hot liquid." (*Id.*) Plaintiff "also received an (X), which is the loss of privileges for as long as [she] was on close observation," which was "about four weeks." (*Id.*) Plaintiff was prevented from filing charges against the other patient and Campbell. (*Id.* at 3.) Plaintiff alleges that the other patient told her that Campbell "put her up to attacking [Plaintiff] with the promise of a sandwich and a soda." (*Id.*)

On an unspecified date, "[w]hile in the dining hall," Campbell harassed Plaintiff by stating that "[she] gave [her] daughter away for adoption" and "call[ing] [her] other derogatory

names such as 'ugly Newburgh bitch.'" (*Id.*) Plaintiff alleges that Campbell's behavior is part of a "pattern of practice," that he "is under investigation for other brutal patient assaults," that he has "a history of abusing minors in his former employment," and that he is "incapable of refraining from harassing [Plaintiff] when he's around [her] with his words and body language." (*Id.*)

## II. Discussion

Defendants move to revoke Plaintiff's IFP status and to dismiss the case. (*See* Defs.' Mem. 6–15.)

### A. Applicable Law

"The current [IFP] statute permits an individual to litigate a federal action [IFP] if the individual files an affidavit stating, among other things, that he or she is unable to prepay fees 'or give security therefor.'" *Coleman v. Tollefson*, 135 S. Ct. 1759, 1762 (2015) (quoting 28 U.S.C. § 1915(a)(1)). However, Congress has long "recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)) (quotation marks and alterations omitted). Accordingly, the current IFP statute contains a "three strikes" provision, which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

A prisoner otherwise barred by the three-strikes provision may satisfy the "imminent danger of serious physical injury" exception by alleging facts plausibly showing that an

6

imminent danger "exist[ed] at the time the complaint [was] filed." *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002); *see also Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018) (same). Further, the prisoner must show that the "feared physical injury . . . be serious." *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010)). However, courts "should not make an overly detailed inquiry into whether the allegations qualify for the exception." *Id.* Although the Court must "construe [a pro se] complaint liberally and interpret it to raise the strongest arguments that it suggests," *id.* at 170 (citation, alterations, and quotation marks omitted), the imminent danger alleged must "be real, and not merely speculative or hypothetical," *Partee v. Connolly*, No. 08-CV-4007, 2009 WL 1788375, at *3 (S.D.N.Y. June 23, 2009) (citation and quotation marks omitted). Simply put, "unsupported, vague, self-serving, conclusory speculation is not sufficient to show that [the] [p]laintiff is, in fact, in imminent danger of serious physical harm." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *3 (S.D.N.Y. Oct. 26, 2010) (citation and quotation marks omitted); *see also Chavis*, 618 F.3d at 170 ("A court may find that a complaint does not satisfy the imminent danger exception if the complaint's claims of imminent danger are conclusory or ridiculous." (citation and quotation marks omitted)).

Finally, the complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009). A court must "consider (1) whether the imminent danger of serious physical injury . . . allege[d] is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298–99 (italics omitted). "This inquiry is not identical to [the] ordinary standing inquiry, but . . . is sufficiently similar to afford guidance to courts considering the nexus question." *Id.* at 299. Thus, the "fairly traceable" inquiry is a lower standard than that of proximate cause, requiring no direct link between the defendant and the

7

injury, although "indirectness of an injury may make it substantially more difficult to show the fairly traceable element." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (citation and quotation marks omitted). As to redressability, the plaintiff must show "that there is a substantial likelihood that the relief requested will redress the injury claimed"; that is, that the plaintiff is "in a position to benefit in some personal way." *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (citation and quotation marks omitted).

B. Analysis

Defendants argue that Plaintiff fails to satisfy the imminent danger exception to the three-strikes provision because, at the time Plaintiff filed the Amended Complaint — March 15, 2018, (*see* Am. Compl. 1) — she was no longer detained at Mid-Hudson and therefore cannot demonstrate imminent danger, (*see* Defs.' Mem. 10–11). This argument, however, misreads the case law. The Second Circuit has held that, even where an amended complaint is filed, the relevant moment in the imminent danger inquiry is when the action is brought, that is, when the initial complaint is filed. *See Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) ("The exception only applies to danger existing at the time the complaint is filed. Construing [the plaintiff's] initial and amended complaint to raise the strongest arguments that they suggest, we do not conclude that the facts alleged support a finding that he was in imminent danger at the time he filed his *initial* complaint. Accordingly, [the plaintiff] does not qualify for the statutory exception." (emphasis added) (citations, quotation marks, and alterations omitted)).

Notwithstanding this binding precedent, Defendants cite to seven district court cases that appear to conduct the imminent danger inquiry with an eye toward whether a such a danger existed at the time the amended complaint was filed. (*See* Defs.' Mem. 11–12.) Four of those cases, however, predate the Second Circuit's decision in *Harris*. *See Neal v. Eddy*, No. 07-CV-

1333, 2008 WL 4527651, at *3 (N.D.N.Y. Oct. 1, 2008) ("[T]he allegations which form the basis of the amended complaint occurred during [the plaintiff's] incarceration at Gouverneur. Thus, the events resulting in [his] placement in involuntary protective custody at Five Points clearly did not occur simultaneously with the filing of the instant complaint as the events each occurred at separate correctional facilities."); *Standley v. Dennison*, No. 05-CV-1033, 2007 WL 2406909, at *14 (N.D.N.Y. Aug. 21, 2007) ("I find nothing on the face of the Amended Complaint indicating that [the plaintiff] is in 'imminent danger of serious physical injury.'" (citations omitted)); *Polanco v. Hopkins*, No. 03-CV-6661, 2007 WL 914023, at *3 (W.D.N.Y. Mar. 23, 2007) ("For the purpose of the present motion [to revoke IFP status], the Court will consider the facts in the alleged complaint, since it superseded and completely replaced the original complaint."); *Rolle v. Garcia*, No. 04-CV-312, 2007 WL 672679, at *2, *10–11 (N.D.N.Y. Feb. 28, 2007) ("I find that nothing on the face of the Amended Complaint indicates that [the] [p]laintiff is in "imminent danger of serious physical injury."). As to the other three cases cited by Defendants, they do postdate *Harris*. *See Henry v. Hall*, No. 12-CV-4534 (S.D.N.Y. Dec. 18, 2014) (Order, at 3 (Dkt. No. 64)) ("[The plaintiff] describes serious past injuries that he claims to have occurred while incarcerated at the Kirby Forensic Psychiatric Center. . . . [However, the plaintiff's] Amended Complaint and Affirmation were filed from the Mid-Hudson Forensic Psychiatric Center and Bellevue Hospital, respectively; he does not allege that he was ever harmed or likely to be harmed at either of those locations."); *Bennett v. Care Correction Sol. Med. Contracted*, No. 15-CV-3746, 2017 WL 4250519, at *5 (S.D.N.Y. Sept. 25, 2017) ("Although [the plaintiff] alleged that the injuries . . . caused 'severe serious pain' that was 'worsening,' he also stated that the injuries had been ignored until October 2015, which suggests that, at the very least, by the time his proposed amended complaint was filed on June 21, 2016, those injuries were no longer

9

ignored and he had received treatment. Therefore, any allegedly imminent danger would have dissipated by the time of his proposed amended complaint."); *Flemming v. Kemp*, No. 09-CV-1185, 2010 WL 3724031, at *2 (N.D.N.Y. Aug. 19, 2010) ("[The plaintiff] failed to establish any plausible indication of imminent harm, especially considering the fact that the excessive force and medical treatment provided immediately thereafter, occurred four years prior to the filing of the amended complaint."). None of these cases, however, cites to the relevant guidance in *Harris* or explains their reasoning as to why it conducted the imminent danger inquiry with view toward events that postdate the filing of the initial complaint. Defendants, for their part, suggest a reason, emphasizing the well-established proposition that "an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation and quotation marks omitted). Yet, that the amended complaint is the legally effective pleading does not change the operative date the action was commenced. Nor can Defendants' argument overcome the Second Circuit's guidance in *Harris*. Indeed, the approach in *Harris* is consistent with the plain language of the PLRA's three-strikes provision, which unambiguously provides that the relevant moment is the institution of suit: "In no event shall a prisoner *bring a civil action* . . . under this section if the prisoner [has three strikes], unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g) (emphases added). Had Congress intended to adopt the approach suggested by Defendants, it would have written the statute differently (for example, by using the term "claim" instead of "civil action"). The Court thus concludes, following *Harris*, that notwithstanding Plaintiff's filing of an Amended Complaint in March 2018, the relevant time period in conducting the imminent danger inquiry is October 19, 2017, the date the initial

Complaint was filed.³ Accordingly, the Court proceeds to consider whether the Amended Complaint alleges facts plausibly showing that, as of October 19, 2017, Plaintiff was in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).⁴

As the Second Circuit has indicated, "[f]or present purposes, the only relevant allegations are those in which [Plaintiff] describes physical injury, threats of violence, and deprivation of

---

³ Numerous lower-court cases in the Second Circuit are in accord. *See, e.g.*, *McFadden v. Annucci*, No. 16-CV-6105, 2019 WL 859780, at *1–2 (W.D.N.Y. Feb. 22, 2019) (dismissing third amended complaint on grounds that "that [the plaintiff's] allegations do not support a finding that he was in imminent danger of serious physical injury when he filed the Complaint"); *Guarneri v. Masaba*, No. 18-CV-1332, 2019 WL 431167, at *3–4 & n.8 (N.D.N.Y. Jan. 4, 2019) (considering substantive allegations raised in the Amended Complaint but noting that, "because the [initial] Complaint was postmarked November 8, 2018, . . . the claims relevant for the determination of 'imminent danger' are those surrounding this date"); *Walker v. Cuomo*, No. 17-CV-650, 2018 WL 6068413, at *2–4 (N.D.N.Y. Nov. 20, 2018) (considering substantive allegations raised in a second amended complaint with a view toward those "incidents that pre-date plaintiff's original complaint, which was filed on or about May 14, 2017" and holding that "any allegations concerning the conditions of confinement since May 14, 2017 . . . do not satisfy the imminent danger exception" (citing *Harris*, 607 F.3d at 24)); *Bernier v. Koenigsmann*, No. 17-CV-254, 2017 WL 8230891, at *4 n.8 (N.D.N.Y. Nov. 22, 2017) ("Although plaintiff has amended his complaint twice, the statutory language of 28 U.S.C. § 1915(g) provides that the 'imminent danger' exception arises at the time when the initial complaint is filed." (citing *Harris*, 607 F.3d at 24)), *adopted by* 2018 WL 1355259 (N.D.N.Y. Mar. 15, 2018); *Liner v. Fischer*, No. 11-CV-6711, 2014 WL 2880020, at *2–3, 5 (S.D.N.Y. June 25, 2014) (considering substantive allegations raised in an amended complaint and other post-complaint filings but concluding that "there was no nexus between the imminent danger [the plaintiff] alleged at the time of his complaint and his claims of deliberate indifference" (citation and quotation marks omitted)), *adopted by* 2014 WL 5438037 (S.D.N.Y. Oct. 27, 2014); *Burgess v. Conway*, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009) ("Nor can [the] plaintiff satisfy the criteria for the exception by relying on events postdating the complaint."); *see also Asemani v. U.S.C.I.S.*, 797 F.3d 1069, 1074 (D.C. Cir. 2015) ("Section 1915(g)'s use of the present tense and its concern with the initial step of bringing the action indicates that the exception applies only if the danger existed at the time the prisoner filed his complaint." (citations omitted)).

⁴ Separately, the Court notes that, although Plaintiff appears to have been released from Mid-Hudson in February 2018, (*see* Defs.' Decl. Ex. C), prior to the mailing and filing of the Amended Complaint in March 2018, the PLRA's three-strikes provision still applies to this Action because the initial Complaint was filed while Plaintiff was detained. *See Harris*, 607 F.3d at 22 ("Had Congress intended that the three strikes rule would no longer apply once a prisoner had been released, it would have written the statutory provision differently.").

medical treatment." *Chavis*, 618 F.3d at 165. Accordingly, for purposes of this Motion, Plaintiff's allegations of verbal and sexual harassment and the filing of false misbehavior reports will not be considered. (*See* Am. Compl. 1–2.) *See also Antrobus v. Dapecevis*, No. 17-CV-5840, 2018 WL 3242272, at *10 n.15 (S.D.N.Y. July 3, 2018) (declining to consider allegations unrelated to physical injury, threats of injury, or deprivation of medical treatment). Relevant here, Plaintiff alleges that, on September 6, 2017, while detained at Mid-Hudson, Marlow "slapped" her face, used "excessive force to put [her] in a wheelchair," and "tried to break [her] 'fucking' wrists" after she refused to get out of bed. (Am. Compl. 1.) Plaintiff alleges that she thereafter received an injection, during which Franqui said, "'Good work guys! Now we finally can get meds over objection.'" (*Id.*) Plaintiff also alleges that, later that morning, she "refused to go to lunch," causing a Mid-Hudson employee (who is not identified or named as a Defendant here) to "put his knee into [Plaintiff's] back while . . . Huebner gave [Plaintiff] a second shot." (*Id.* at 1–2.) Plaintiff was then taken to the Special Services Unit, "a unit for the acutely mentally ill" and for "violent, assaultive[,] and unmanageable patients," for "three weeks." (*Id.* at 2.)

Defendants argue that these allegations do not "contain[] any allegation of *future* harm," and that they are "entirely backward-looking" and "describe only *past* incidents of excessive force and forced medication." (Defs.' Mem. 14 (emphasis in original).) The Court agrees. Even assuming Plaintiff's allegations suffice to state that she suffered "serious physical harm," 28 U.S.C. § 1915(g), Plaintiff makes no allegation that the alleged assault of September 6, 2017 was part of an ongoing series of assaults or threats of assault. *See Anderson v. Nolan*, No. 16-CV-6155, 2018 WL 3126709, at *3 (W.D.N.Y. June 26, 2018) ("[The] [p]laintiff's Complaint did not explicitly reference any serious physical injury imminent at the time of filing — instead, it

recounted only past alleged harms. The only potential basis for inferring serious and imminent physical harm would seem to be the claimed persistence of injuries from the alleged assault . . . and the purported failure to properly treat those injuries. Even in the light most favorable to [the] [p]laintiff, the continuation of his claimed physical infirmities does not rise to the level of 'serious' physical harm contemplated by § 1915(g)."); *Antrobus*, 2018 WL 3242272, at *10 ("[The] [p]laintiff cannot claim imminent danger from events that occurred in the past, without allegations that they are ongoing or likely to continue in the future."); *Burgess*, 631 F. Supp. 2d at 283 ("[The] [p]laintiff has not made a sufficient showing of imminent physical danger to qualify for the exception. He simply alleges that he has been assaulted in the past, and there are no allegations in the complaint indicating that another attack is imminent."); *cf. Chavis*, 618 F.3d at 170 ("An allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception."). Nor does Plaintiff allege that she was deprived medication or medical treatment, that the medication she was administered on September 6, 2017 caused her injury, or that Defendants further forcibly administered her medication without her consent. In sum, although Plaintiff brings claims of physical assault, those allegations appear to have "dissipated by the time" the initial Complaint was filed on October 19, 2017. *Pettus*, 554 F.3d at 296. There are no allegations from which the Court can plausibly infer that, at the time this Action was commenced, Plaintiff was under imminent danger of serious physical injury. *See Malik*, 293 F.3d at 563.[5]

---

[5] Although the Amended Complaint also contains allegations of physical harm that postdate the October 19, 2017 filing of the initial Complaint, these allegations may not be considered in the imminent danger inquiry under *Harris*. Moreover, even were the Court to consider these allegations, they do not make out a plausible claim of imminent danger. Plaintiff alleges that, in November 2017, following an altercation with another inmate, Defendant

III. Conclusion

For the reasons stated above, Defendants' Motion To Revoke Plaintiff's IFP Status and To Dismiss is granted. Plaintiff's Amended Complaint is dismissed without prejudice. Because Plaintiff is no longer in custody, should Plaintiff wish to re-file this Action, Plaintiff must, within 30 days of the date of this Order, either pay the appropriate filing fee or submit an IFP application demonstrating that Plaintiff is unable to do so. *See Liner v. Fischer*, No. 11-CV-6711, 2014 WL 2880020, at *5 (S.D.N.Y. June 25, 2014) (noting that the plaintiff could either "pay the filing fee" or "file an IFP application . . . , just as any other non-incarcerated litigant (not being subject to the three strikes provision) . . . would be eligible to do" (citations omitted)),

---

Campbell used excessive force on her, causing her pain for several weeks. (Am. Compl. 2.) Yet, Plaintiff does not allege any connection between the allegations of September 2017 (which pre-date the filing of the initial Complaint) and those of November 2017; indeed, Campbell is not alleged to be involved in the former set of allegations. The Court thus cannot conclude that the two sets of allegations form part of a pattern of ongoing assaults that might weigh in favor of an imminent danger finding. Plaintiff does allege that Campbell's behavior was part of a "pattern of practice," that Plaintiff and Campbell have a personal history stemming from a prior incident of alleged assault in 2015, that Campbell "is under investigation for other brutal patient assaults," and that Campbell has "a history of abusing minors in his former employment." (*Id.* at 2–3.) Yet, these threadbare allegations are insufficient to suggest Plaintiff was under "imminent" threat of physical harm by Campbell. *See McDaniels v. Fed. Bureau of Prisons*, No. 15-CV-6163, 2016 WL 6997525, at *5 (S.D.N.Y. Nov. 29, 2016) (rejecting the plaintiff's "conclusory claims" as insufficient to make out an allegation of imminent danger); *Nelson v. Hilton*, No. 10-CV-1280, 2013 WL 877167, at *8 (N.D.N.Y. Mar. 11, 2013) (rejecting the plaintiff's "vague, unsupported generalizations" as insufficient to make out an allegation of imminent danger (citation omitted)). Indeed, Plaintiff's allegation that Campbell is "incapable of refraining from harassing [Plaintiff] when he's around [her] with *his words and body language*," (Am. Compl. 2), indicates that Plaintiff was not under imminent threat of physical harm.

Separately, as to Plaintiff's allegations that certain Defendants "wrote a risk assessment that characterized [Plaintiff] as unpredictable and assaultive[] and ordered [Plaintiff] to be on close-observation with no sharps and no hot liquid," that Plaintiff lost unspecified privileges as a result, that Plaintiff was prevented from filing criminal charges against Campbell and another inmate, and that Campbell verbally harassed Plaintiff, (*id.* at 2–3), these are not allegations of physical harm, and thus the Court does not consider them for purposes of the instant Motion, *see Chavis*, 618 F.3d at 165.

14

*adopted by* 2014 WL 5438037 (S.D.N.Y. Oct. 27, 2014). If Plaintiff fails to abide by this 30-day deadline, this case will be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 37), and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 18, 2019
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE