```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| REGINA LEWIS,<br><br>      Plaintiff,<br><br>    v.<br><br>BARRY MARLOW and EDWARD CAMPBELL,<br><br>      Defendants.[1] | No. 17-CV-8101 (KMK)<br><br>ORDER |

KENNETH M. KARAS, United States District Judge:

Plaintiff Regina Lewis ("Plaintiff") brought this pro se Action under 42 U.S.C. § 1983 against various Defendants, alleging violations of her constitutional rights while she was committed at Mid-Hudson Psychiatric Center ("Mid-Hudson"). (*See* Second Am. Compl. ("SAC") (Dkt. No. 51).) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 37 (the "Motion"). (Not. of Mot. (Dkt. No. 112).) For the reasons that follow, the Motion is granted.

## I. Background

The Court has previously described the allegations and procedural history of this case in two prior Opinions. (*See* Dkt. No. 46; Op. & Order ("Mar. 2020 Op.") (Dkt. No. 89).) The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant Motion.

On August 15, 2019, Ellen Huebner ("Huebner"), Lisa Wallace ("Wallace"), and MaryAnn Franqui ("Franqui" and, together with Huebner and Wallace, "Former Defendants"),

---

[1] The Clerk of Court is respectfully directed to revise the case caption to reflect the dismissal of Plaintiff's claims against Ellen Huebner, Lisa Wallace, and MaryAnn Franqui. (*See* Dkt. No. 89.)

along with Barry Marlow ("Marlow") and Edward Campbell ("Campbell" and, together with Marlow, "Defendants"), moved to dismiss Plaintiff's Second Amended Complaint (the "SAC"). (Dkt. No. 72.) In an Opinion & Order entered March 16, 2020 (the "March 2020 Opinion"), the Court partially granted and partially denied the motion. (*See* Mar. 2020 Op. 21–22.) Though the Court dismissed any official capacity claims and all claims against Huebner, Franqui, and Wallace, it concluded that Plaintiff could proceed with a claim for administration of unwanted medical treatment against Marlow, as well as an excessive force claim against Campbell. (*Id.*) The Court provided that its dismissals were without prejudice and gave Plaintiff 30 days to file a third amended complaint. (*Id.* at 22.) It advised Plaintiff that if she "fail[ed] to abide by the 30-day deadline, the dismissed claims may be dismissed with prejudice, and the Action will proceed on the remaining claims." (*Id.*)[2]

Plaintiff failed to file a third amended complaint. (*See* Dkt.) Instead, on March 26, 2020, she filed a document styled as "Plaintiff's Order To Show Cause For Summary Judgment," in which she described the Court's March 2020 Opinion as "a classic example of bias and subterfuge meant to exceed the bounds of the court's discretion" and set forth her view that "it has no real force of law." (Dkt. No. 90.)[3] Plaintiff also purported to move for summary judgment. (*See id.*) On May 12, 2020, counsel for Defendants filed a letter advising the Court that Plaintiff had not filed a third amended complaint within the 30-day window set by the Court, and requested that the Court set a deadline by which Defendants would file answers to the SAC.

---

[2] The March 2020 Opinion was mailed to Plaintiff at the address provided on the docket on March 17, 2020. (*See* Dkt. (entry for Mar. 17, 2020).)

[3] Unless otherwise noted, the dates given with respect to Plaintiff's submissions refer to the dates on which her letters and other filings were docketed on ECF.

2

(Dkt. No. 91.) In a Memo Endorsement the same day, the Court noted that Plaintiff had missed the deadline to file a third amended complaint and directed that Defendants file their answers to the SAC no later than May 31, 2020. (Dkt. No. 93.) Campbell and Marlow each filed separate Answers on May 28, 2020. (Dkt. Nos. 97–98.)[4]

On May 20, 2020, Plaintiff filed a document styled as "Plaintiff's Response & Order To Show Cause for Summary Judgment." (Dkt. No. 95.) In this document, Plaintiff stated that she was "not amending [her second amended] complaint," accused the Court of "bias and subterfuge," and again purported to move for summary judgment. (*Id.*) In a Memo Endorsement entered May 22, 2020, the Court denied Plaintiff's purported motion for summary judgment without prejudice, noting that the motion was premature and that Plaintiff had failed to comply with the Court's Individual Rules. (Dkt. No. 96.) The Court also advised Plaintiff that "[a]fter remaining Defendants file an Answer and discovery is complete, [she] should request leave to file a motion for summary judgment if she still wishes to do so." (*Id.*)

On July 1, 2020, Defendants served Plaintiff with their first set of interrogatories and authorization request for the release of medical and psychiatric records and notes, responses to which were due July 31, 2020. (Letter from Antwaun Gavins, Esq., to Court (July 17, 2020) ("Discovery Letter") 1 (Dkt. No. 101).) On July 9, 2020, Plaintiff filed a document styled as "Plaintiff[']s Fourth Demand for Summary Judgment Pursuant to Fed. R. Civ. P. Rule 56(a)." (Dkt. No. 100.) In this document, Plaintiff asserted (erroneously) that, "[t]o date there is no answer on the record from any of the defendants within the timeframe prescribed by court rule,"

---

[4] Defendants' May 12 letter was mailed to Plaintiff on the same day, (*see* Dkt. No. 92), the Court's May 12 Memo Endorsement was mailed to Plaintiff on May 13, (*see* Dkt. No. 94), and Defendants' respective Answers were served on Plaintiff on May 28, (*see* Dkt. No. 99).

3

and again purported to move the Court for summary judgment. (*Id.*) She stated that she would not comply with Defendants' discovery requests—particularly their request for certain medical records—until the Court decided her putative motion for summary judgment. (*Id.*)[5] On July 17, 2020, Defendants filed a letter asking the Court to set a pre-motion discovery conference or, in the alternative, to compel Plaintiff to answer their interrogatories and provide the requested medical records. (Discovery Letter 1.) In a Memo Endorsement issued the same day, the Court ordered Plaintiff to respond within two weeks. (Dkt. No. 102.) In that endorsement, the Court emphasized that it had "denied [Plaintiff's] summary judgment motion and, in any event, the filing of such a motion does not relieve her of her obligation to provide discovery." (*Id.*)[6]

Plaintiff responded on July 23, 2020, asserting that the Court had no "cause to dismiss any of the [D]efendants since [she] [was] not in receipt of any decision denying [her] motion for summary judgment as to each [D]efendant." (Dkt. No. 104.) She continued:

> I doubt that the [C]ourt has cause to force me to sign anything and therefore, I decline to sign anything since the relevance of my protected medical information has not been identified in a hearing nor an order or stipulation. This is a civil case and I do not have to disclose my medical records half hazard [sic] and I will not.

(*Id.*) Plaintiff further opined that "[u]nder these circumstances none of the [D]efendants ha[s] truly been dismissed since there are no issues for trial and the [C]ourt[] has not taken judicial

---

[5] Plaintiff also alleged that the Court "has never issued the requisite scheduling order as per Rule (16) Subdivision (b)," and stated that she would not "sign any medical releases" until the Court "explain[ed] [her] case's exemption from court Rule (16)." (Dkt. No. 100.) The Court notes that it has repeatedly issued orders regarding the management of this case, (*see* Dkt. Nos. 14, 20, 23, 49, 64, 68, 70, 93, 107), and thus, any notion that the Court has failed to manage the progress of this case is unfounded. In any event, a court's failure to issue a formal scheduling order under Fed. R. Civ. P. 16 is harmless error, particularly where, as here, a court has "closely managed the litigation." *Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC*, 808 F. App'x 338, 346 (6th Cir. 2020) (gathering authorities).

[6] Defendants' July 17 Discovery Letter and the Court's Memo Endorsement of the same date were mailed to Plaintiff on July 17 and July 18, respectively. (*See* Dkt. No. 103.)

notice or ruled on any issue after a hearing." (*Id.*)  In a Memo Endorsement dated July 27, 2020, the Court noted that it "ha[d] explained that it is inappropriate to have either side file summary judgment motions before discovery is complete," adding that "[t]his is fair to all parties." (Dkt. No. 105.)  The Court gave Plaintiff "one last chance to comply with the discovery demands, by 8/21/20, or face the possibility of certain sanctions, including dismissal." (*Id.*)[7]  In a short Order entered on July 31, 2020, the Court advised Plaintiff that she was "entitled to pursue discovery as well," and that she could "confer with the Pro Se Office in doing so." (Dkt. No. 107.)  The Order provided that all document requests and interrogatories were due August 31, 2020, all depositions were to be completed by November 30, 2020, and any pre-motion letters were due December 15, 2020, with responsive letters due two weeks later. (*Id.*)

On August 31, 2020, counsel for Defendants filed a letter notifying the Court that on July 29, 2020, Plaintiff had "left two messages on [his] office phone filled with vulgar, inflammatory, and racial slurs toward [him] and the Court, making it very clear that she would not comply with the Court's [July 27] Order," in which the Court directed Plaintiff to comply with Defendants' discovery requests. (Letter from Antwaun Gavins, Esq., to Court (Aug. 31, 2020) ("Second Discovery Letter") 1 (Dkt. No. 108).)[8]  Defendants requested a pre-motion conference in

---

[7] The Court's July 27 Memo Endorsement was mailed to Plaintiff on July 28. (*See* Dkt. No. 106.)

[8] In Plaintiff's July 29 voicemail messages, which Defendants provided digitally to the Court, Plaintiff stated, among other things: "Quit fucking with me bitch, I'm not signing no medical releases, I'm not doing shit"; "You're a coward, you're a retard, you're not even smart, and your representation is piss poor"; "No matter what it takes, no matter what the end result is, you're going to pay"; "Fuck you and fuck them judges"; "I'm not afraid of none of you, I'm ready to take one for the team"; and, "[y]ou're going to lose that lawsuit, and a hell of a lot more." (Decl. of Antwaun Gavins, Esq., in Supp. of Defs.' Mot. To Dismiss ("Gavins Decl.") ¶ 8 (Dkt. No. 116).)  On September 3, 2020, counsel for Defendants received another voicemail from Plaintiff, in which she stated, "I'm begging you to try me," and "I do not have to disclose my medical records to a bunch of dirty Jews." (*Id.* ¶ 10.)  Plaintiff left a fourth voicemail on

5

anticipation of seeking sanctions for Plaintiff's refusal to comply with the Court's Order. (*Id.*)

By Memo Endorsement entered September 1, 2020, the Court concluded that in light of

Plaintiff's "inappropriate behavior, much of which has been directed at the Court, including

chambers staff, there [was] no need for a conference." (Dkt. No. 109.) It also noted that Plaintiff

"ha[d] been advised on numerous occasions to comply with her discovery obligations, but . . .

ha[d] declined to do so." (*Id.*) Accordingly, the Court set a briefing schedule for Defendants'

sanctions motion. (*Id.*) Pursuant to this schedule, Defendants filed the instant Motion and

supporting papers on September 18, 2020. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of

Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 114); Gavins Decl.)[9]

On September 15, 2020, shortly before Defendants filed the instant Motion, Plaintiff filed

a putative motion to disqualify the Court from hearing this case. (Dkt. No. 111.) In her

submission to the Court, Plaintiff inveighed against a former chambers employee, attacked the

Court's prior decision revoking her in forma pauperis status, and accused the Court of fraud,

bias, and mismanagement. (*Id.*) Plaintiff also suggested—falsely—that the Court had never

ordered her to comply with Defendants' discovery requests, and maintained that she could not

"be expected to release all [her] health information on a whim." (*Id.*) Two weeks later, on

---

Plaintiff's work phone, of a similar ilk, on September 4, 2020. (*Id.* ¶ 11.) These messages, which are on file with the Court, are consistent with similar messages Plaintiff has left on the Court's voicemail system in recent years, as well as the expletive- and slur-laden screeds to which she has subjected chambers staff when calling during regular business hours. Indeed, on August 21, 2019, the Court explicitly forbade Plaintiff from "call[ing] chambers for any reason." (Dkt. No. 75.)

[9] Defendants' August 31 letter and the Court's September 1 Memo Endorsement were mailed to Plaintiff on August 31 and September 1, respectively. (*See* Dkt. No. 110; Dkt. (entry for Sept. 1, 2020).) Defendants' Motion and supporting papers were served on Plaintiff on September 20, 2020. (*See* Dkt. No. 115.)

6

September 29, 2020, Plaintiff reprised many of the same themes in a short submission opposing the instant Motion. (*See generally* Pl.'s Resp. (Dkt. No. 117).) Defendants submitted their Reply on November 2, 2020. (*See* Defs.' Reply Mem. of Law in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 118).)[10]

On April 27, 2021, while the instant Motion was pending, Plaintiff submitted a letter to the Court in which she again purported to move for summary judgment. (Dkt. No. 120.) In her letter, Plaintiff acknowledged the Court's prior Order(s) directing her to comply with Defendants' discovery requests regarding medical records. (*Id.*) She also acknowledged that she "did decline to comply with" the Court's previous Orders, asserting—incorrectly—that "[D]efendants have not answered according to the rules." (*Id.*) In the same letter, Plaintiff also requested "a hearing as soon as can be heard to discuss settlement or issues for trial." (*Id.*) In a short reply, Defendants opposed Plaintiff's request for a conference and reiterated their arguments in support of the instant Motion. (*See* Dkt. No. 122.)

Finally, on May 25, 2021, the Court received a venomous and obscene letter from Plaintiff that bears only tangentially on the issues in this case. (*See* Dkt. No. 123.) Stripped of its harsh invective and fevered assertions, the letter accused the Court of "obstructing [Plaintiff's] right to compensation" and argued that the Court "ha[s] no authority to even utter the word sanction." (*Id.*) Plaintiff concluded by demanding "an injunction for payment of [her] chiropractic care" and expressing her displeasure with counsel for Defendants and the Court. (*See id.*)

---

[10] Defendants' Reply was served on Plaintiff on November 2, 2020. (*See* Dkt. No. 119.)

II. Discussion

A. Rule 37 Dismissal

"The discovery provisions of the Federal Rules of Civil Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (citation and quotation marks omitted). Although "[i]t is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention," *id.*, this design is not always realized. Where, as here, a party "prevent[s] disclosure of facts essential to an adjudication on the merits" by disobeying a court's discovery orders, "severe sanctions are appropriate." *Id.* The decision to impose discovery sanctions "is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion." *Wisser v. Vox Media, Inc.*, No. 19-CV-1445, 2020 WL 1547381, at *8 (S.D.N.Y. Apr. 1, 2020) (ultimately quoting *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990)); *see also Daval Steel*, 951 F.2d at 1365 (noting a district court's "wide discretion" to impose sanctions, "including severe sanctions, under Rule 37(b)(2)").

Rule 37 of the Federal Rules of Civil Procedure "governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir. 2012). Rule 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The purposes of Rule 37 sanctions are three-fold:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect

8

> on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). Once a court determines that a party has disobeyed a discovery order, it "ha[s] a range of sanctions from which to choose," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009), including "dismissing the action or proceeding in whole or in part," Fed. R. Civ. P. 37(b)(2)(A)(v). Although dismissal under Rule 37 "is a drastic penalty which should be imposed only in extreme circumstances," *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) (citation omitted), it is an appropriate sanction "where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault," *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *see also Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (same); *Update Art*, 843 F.2d at 71 (observing that although dismissal is a "harsh remed[y]" that "should be imposed only in rare situations," it is "necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger" (citation and quotation marks omitted)). Courts often consider four factors in determining whether to dismiss an action under Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal*, 555 F.3d at 302 (ellipsis omitted); *see also Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (listing same factors); *Dragon Yu Bag Mfg. Co. v. Brand Science, LLC*, 282 F.R.D. 343, 345 (S.D.N.Y. 2012) (same). "[T]hese factors are not exclusive," and no one factor is dispositive. *S. New Eng. Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

This is a case in which the exceptional sanction of dismissal under Rule 37 is warranted. As a threshold matter, Rule 37's predicate requirements—a "court order directing compliance

9

with discovery requests, and non-compliance with that order," *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-CV-3533, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017)—have both been satisfied. As stated, the Court informed Plaintiff that she was "not relieve[d] [of] her obligation to provide discovery" in a Memo Endorsement entered on July 17, 2020. (Dkt. No. 102.) Ten days later, the Court warned Plaintiff that it was "giv[ing] [her] one last chance to comply with the [Defendants'] discovery demands," ordering her to comply with such demands by August 21, 2020, "or face the possibility of certain sanctions, including dismissal." (Dkt. No. 105.) Finally, in a short Order entered on July 31, 2020, the Court extended the deadline for producing documents until August 31, 2020. (Dkt. No. 107.) Over 10 months later, Plaintiff still has not complied with the Court's discovery orders. Indeed, she has repeatedly expressed defiance and contempt toward these orders, conveying in unambiguous terms that she will not produce the requested medical records.

Each of the four factors to be considered under Rule 37 also weighs in favor of dismissal.

First, with respect to "the willfulness of the non-compliant party or the reason for noncompliance," *Agiwal*, 555 F.3d at 302, it is clear that Plaintiff's noncompliance has been willful. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Thompson v. Jam. Hosp. Med. Ctr.*, No. 13-CV-1896, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015) (citation omitted). "Willful non-compliance is routinely found, for instance, where a party has repeatedly failed to produce documents in violation of the district court's orders." *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13-CV-6653, 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015) (citation, alterations, and quotation marks omitted). Here, the Court ordered Plaintiff to comply with Defendants' discovery

requests on numerous occasions. (*See* Dkt. Nos. 102, 105, 107.) It is clear from Plaintiff's defiant letters to the Court, as well as the obscene and belligerent voicemail messages she left on Defense counsel's phone, that she understood the Court's orders. (*See, e.g.*, Dkt. No. 104 ("I doubt that the [C]ourt has cause to force me to sign anything and therefore, I decline to sign anything since the relevance of my protected medical information has not been identified in a hearing nor an order or stipulation. This is a civil case and I do not have to disclose my medical records half hazard [sic] and I will not."); Gavins Decl. ¶ 8 (quoting from voicemail in which Plaintiff advised that she was "not signing [any] medical releases").) Finally, Plaintiff's noncompliance is not "due to factors beyond [her] control," *Thompson*, 2015 WL 7430806, at *3, but to her own intransigence and refusal to follow standard discovery procedures. Her willfulness in this regard has been brazen and consistent. This factor therefore weighs in favor of dismissal. *See Agiwal*, 555 F.3d at 302–03 (plaintiff's willful refusal to appear at three scheduled depositions weighed in favor of dismissal); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (plaintiff's "sustained and willful intransigence in the face of repeated and explicit warnings from the court" supported dismissal).

Second, with respect to the efficacy of lesser sanctions, it is generally true that "a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Farmer*, 2015 WL 2250592, at *8 (citation omitted). However, "deliberate and persistent noncompliance may render lesser sanctions inappropriate, and a district court is not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Id.* (citations and quotation marks omitted); *see also Shanghai Weiyi*, 2017 WL 2840279, at *12 (same). Although Plaintiff previously received court-ordered monetary sanctions in a separate case, (*see* Gavins Decl. ¶ 4),

11

it is clear these sanctions failed to deter Plaintiff's misconduct in the instant litigation. In view of Plaintiff's clear and consistent refusals to obey the Court's discovery orders, as well as the contempt with which she has flouted these orders, the Court finds that any sanction short of dismissal would fail to serve the purposes of Rule 37 sanctions. *See Update Art*, 843 F.2d at 71; *cf. Agiwal*, 555 F.3d at 303.

Third, with respect to the duration of Plaintiff's noncompliance, courts "have found noncompliance for a period of several months sufficient to warrant dismissal or default." *Urbont v. Sony Music Ent.*, No. 11-CV-4516, 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) (citing, *inter alia*, *Phelan v. Cambell*, 507 F. App'x 14, 16 (2d Cir. 2013) (summary order) (affirming Rule 37 dismissal based on seven months of noncompliance); *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (affirming Rule 37 dismissal where the plaintiff violated discovery orders over a three-month period)). Here, Plaintiff has had over 10 months to comply with the Court's discovery orders, but has failed to do so. Such a lengthy delay counsels in favor of imposing the sanction of dismissal. *See Agiwal*, 555 F.3d at 303 (affirming Rule 37 dismissal after the plaintiff defied the court's discovery orders over a span of six months); *cf. Farmer*, 2015 WL 2250592, at *9 (finding that a plaintiff's eight-month delay "in curing his discovery deficiencies [was] sufficiently long to justify sanctions").

Fourth, with respect to "whether the non-compliant party ha[s] been warned of the consequences of noncompliance," *Agiwal*, 555 F.3d at 302 (ellipsis omitted), the Court explicitly advised Plaintiff in its July 27 Memo Endorsement that if she did not comply with Defendants' discovery demands, she "face[d] the possibility of certain sanctions, *including dismissal*," (Dkt. No. 105 (emphasis added)). Although "severe sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued non-

12

compliance and has nevertheless refused to comply," *Urbont*, 2014 WL 6433347, at *3, here, Plaintiff was on notice that her case could be dismissed if she continued to disregard the Court's discovery orders. Thus, this fourth factor also weighs in favor of dismissal. *See Agiwal*, 555 F.3d at 304 (dismissal warranted where the plaintiff had been "warned of the possibility of sanctions, including dismissal"); *Valentine*, 29 F.3d at 50 (dismissal warranted where the plaintiff ignored "repeated and explicit warnings from the court that the refusal to comply with court orders . . . would result in the dismissal of his action"); *see also Murray v. Mitsubishi Motors of N. Am., Inc.*, 462 F. App'x 88, 90 (2d Cir. 2012) (summary order) (affirming Rule 37 dismissal where the plaintiff "continued to ignore the court's [discovery] orders despite the court's warning . . . that further noncompliance could result in dismissal of the action"). Finally, while it is true that pro se litigants are "generally entitled to 'special solicitude' before district courts," they are still obliged to follow a court's discovery orders, and they "are not immune to dismissal as a sanction for noncompliance with [such] orders." *Agiwal*, 555 F.3d at 302 (citation omitted). Indeed, "[d]ismissal of a pro se litigant's action may be appropriate so long as a warning has been given that non-compliance can result in dismissal." *Id.* (citation and quotation marks omitted); *see also Valentine*, 29 F.3d at 50 (same). Thus, Plaintiff's pro se status does not shield her from dismissal of the instant case.

For the reasons stated above, the Court will grant the instant Motion and dismiss this Action with prejudice. Although the Court hesitates to impose such a severe remedy, this sanction is warranted in light of Plaintiff's persistent and defiant refusal to comply with the Court's discovery orders over the course of nearly a year. In flouting her discovery obligations, Plaintiff has repeatedly shown herself willing to harass her adversaries, insult the Court and its staff, and submit numerous meritless filings—replete with vulgarities and slurs—that waste

13

judicial resources, all of which bespeak her willfulness and bad faith. In light of Plaintiff's "sustained and willful intransigence in the face of repeated and explicit warnings from the court," *Valentine*, 29 F.3d at 50, dismissal is the only sanction "commensurate with the non-compliance," *Shanghai Weiyi*, 2017 WL 2840279, at *12.

### B. Motion To Disqualify

Finally, Plaintiff's putative motion to disqualify the Court, (Dkt. No. 111), is baseless and must be denied. Insofar as Plaintiff seeks to disqualify the Court based on its prior adverse rulings, (*see id.*), it is well-established that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994). Insofar as Plaintiff accuses the Court of "bias towards poor people," fraud, and mismanagement, (*see* Dkt. No. 111), these allegations have no basis in fact and do not merit a lengthy response.

### III. Conclusion

For the reasons stated above, Defendants' Motion is granted. This case is dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 112), terminate Plaintiff's putative motion to disqualify the Court, (Dkt. No. 111), close this case, and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: June 3, 2021
       White Plains, New York

KENNETH M. KARAS
United States District Judge